IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MONIKA TAYLOR,** individually and
on behalf of all others similarly situated,

                                                                                                                                                                                 No. 3:16-cv-00661-MO

        v.                                                                                                                                                            OPINION AND ORDER

**NIKE, INC.**,

        Defendant.

**MOSMAN, J.**,

       This matter comes before the Court on Nike's Motion to Dismiss [15] Ms. Taylor's Complaint [1]. For the reasons set forth below, I GRANT Nike's Motion and DISMISS Ms. Taylor's Complaint with leave to amend.

## BACKGROUND

       Ms. Taylor asserts the following factual allegations in her Complaint. In the summer of 2015, Ms. Taylor visited a Nike Outlet Store in Orange, California. There, she observed several items marked with tags that contained two prices: a "Sugg. Retail Price" and a lower "Our Price." She also observed other items without such tags, leading her to believe that the items with tags were discounted. Enticed by the prospect of "receiving a bargain," Ms. Taylor purchased several items from the store.

1 – OPINION AND ORDER

Believing she was deceived, Ms. Taylor brought this suit against Nike. In general, Ms. Taylor claims that Nike's use of the dual price tags is misleading to reasonable consumers. She asserts four causes of action arising under California law: the False Advertising Law ("FAL"); the Consumers' Legal Remedies Act, ("CLRA"); the Unfair Competition Law, ("UCL"); and unjust enrichment. Nike moves to dismiss these claims, arguing that Ms. Taylor lacks standing to bring suit and that the Complaint fails to satisfy the heightened pleading requirements for fraud. I held oral argument on November 10, 2016.

## DISCUSSION

### I. Whether Ms. Taylor Has Standing Under Article III

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) *as revised* (May 24, 2016). Plaintiff bears the burden of proof and must "'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). An injury in fact is one that is (a) concrete and particularized and (b) actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In other words, the injury "must affect the plaintiff in a personal and individual way," and "must actually exist." *Spokeo*, 136 S. Ct. at 1548. "Even named plaintiffs who represent a class must allege and show that they personally have been injured." *Id.* at 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)) (internal quotation marks omitted).

Nike argues that Ms. Taylor lacks standing to bring these state law claims because she has failed to meet Article III's injury in fact requirement. Nike also argues that Ms. Taylor has failed to plead facts sufficient to show she has standing to seek injunctive relief.

### A. *Injury in Fact*

A person has standing under the UCL, FAL, or CLRA when that person has suffered an economic injury as a result of unfair competition. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-04, 1108 (9th Cir. 2013) *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). An "economic injury" is a loss or deprivation of money or property which requires no more injury than "the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Plaintiffs meet the economic injury in fact requirement when "they show that, by relying on a misrepresentation on a product label, they 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.'" *Id.* (quoting *Hinojos*, 718 F.3d at 1104 n.3).[1]

Ms. Taylor has sufficiently pled that she suffered an injury in fact. In her Complaint, she alleges that she observed merchandise with the dual price tags and understood the tags to mean she was "receiving a bargain." She also asserts that she was "induced" to purchase the items on the prospect of the bargain and would not have purchased them, or paid the prices she did, had she "known she was not truly receiving a bargain." These allegations are sufficient to meet the economic injury requirement under the UCL, FAL, or CLRA, which corresponds to the injury in fact requirement under Article III.

Nike argues that Ms. Taylor's failure to plead sufficient facts regarding the falsity of Nike's statements undercuts her ability to establish standing under the UCL, FAL, or CLRA.

---

[1] To satisfy standing under the UCL, FAL, or CLRA, a person much also plead a causal link between the economic injury and the alleged misrepresentation. *See Hinojos*, 718 F.3d at 1103-04. "In cases such as these," however, the "causation requirement . . . and the economic injury requirement are coextensive." *Id.* at 1104 n.5.

But, the facts necessary to establish standing are not the same as those required to plead a claim with particularity. *See Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *3 (N.D. Cal. July 13, 2015) (finding that challenges to standing and a complaint's sufficiency under Rule 8(a) or 9(b) involve different questions); *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMAJMA, 2015 WL 1841231, at *4, *6 (S.D. Cal. Mar. 20, 2015) (finding that the plaintiff had made sufficient allegations for purposes of standing even though those same allegations failed to meet the heightened pleading requirement under Rule 9(b)). Thus, even if Ms. Taylor's claims are insufficient under the heightened pleading standard of Rule 9(b), they are sufficient to provide Ms. Taylor with standing under Article III.

### B. *Standing to Seek Injunctive Relief*

Regardless of whether Ms. Taylor has made sufficient allegations to show she suffered an injury in fact, she still has to demonstrate that she has standing to seek injunctive relief. Nike argues that even if Ms. Taylor plans to shop at Nike Outlets in the near future, her knowledge of the purported false pricing scheme precludes her from seeking injunctive relief because she can no longer be induced by a bargain she knows does not exist.

In addition to the three general requirements for Article III standing, a plaintiff seeking injunctive relief must also show that she is "realistically threatened by *repetition* of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)).

District courts in the Ninth Circuit are split on the issue of whether plaintiffs in Ms.

Taylor's position have standing to seek injunctive relief. *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (RNBx), 2015 WL 1526559, at *11 (C.D. Cal. Mar. 23, 2015). In some cases, district courts have denied standing because consumers who become aware of a defendant's false advertising cannot establish that they are likely to be "fooled again" by the misrepresentations. *See, e.g.*, *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *7 (N.D. Cal. May 6, 2015); *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *6 (N.D. Cal. June 13, 2012). In other cases, district courts have found standing, reasoning that holding otherwise would "eviscerate the intent of the California legislature in creating consumer protection statutes." *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012); *Spann*, 2015 WL 1526559, at *11; *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWX), 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011). Although I recognize the policy concerns of denying standing in cases like these, I agree with the former line of cases and conclude that Ms. Taylor does not have standing to seek injunctive relief.

"[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 133 S. Ct. 2653, 2667 (2013). Under federal law, it is "the imminent prospect of future injury," not the "presence or absence of a past injury," that "determines Article III standing to seek injunctive relief." *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (citations omitted) (internal quotation marks omitted); *see also Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (citation omitted) (internal quotation marks omitted)).

Here, Ms. Taylor's economic injury is rooted in Nike's alleged deception; without such deception, she would not have purchased the merchandise or paid as much as she did. By virtue of her past injury, however, Ms. Taylor is now aware of any false pricing scheme in which Nike might be engaged. Therefore, she cannot demonstrate "the imminent prospect of future jury" because she can no longer be deceived.

The fact that California's consumer protection laws[2] explicitly provide for injunctive relief does not change this conclusion. *See* Cal. Bus. & Prof. Code § 17203 (West 2017); Cal. Civ. Code § 1780 (West 2017); *Spann*, 2015 WL 1526559, at *9 ("An injunction is the primary form of relief available . . . to protect consumers from unfair business practices[.]" (citation omitted) (internal quotation marks omitted)). Regardless of whether the California legislature intended injunctive relief to be available in these cases, Article III "limits the jurisdiction of federal courts to 'cases and controversies.'" *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001); *see also* 3 Henry P. Johnston, *Correspondence and Public Papers of John Jay* 486-89 (1891); 10 Jared Sparks, *The Writings of George Washington* 542-45 (1836) (detailing how Justices, by letter to President Washington, declined to answer questions posed to the Supreme Court by Secretary of State Thomas Jefferson as not involving cases or controversies). Thus, "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury." *Lee*, 260 F.3d at 1001-02.

Again, I recognize that in this instance, the federal standing requirements create a situation in which a consumer who has demonstrated economic injury under California's consumer protection laws lacks Article III standing to pursue injunctive relief in federal court. But a body of law almost as old as the Republic requires this result. Ms. Taylor has not

---

[2] I use "consumer protection laws" as shorthand for the UCL, FAL, and CLRA collectively.

demonstrated, nor can she demonstrate, that she has standing to seek injunctive relief under Article III.

## II. Whether Ms. Taylor Has Met the Pleading Standard Under Rule 9(b)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original). While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant fair notice of the claim and the grounds on which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 15 provides that a court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). As such, "when a court dismisses a complaint for failure to state a claim, 'leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serrv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

In addition to the pleading requirements under Rule 8(a), a plaintiff alleging fraud must plead her claim with particularity. Fed. R. Civ. P. 9(b). Under this heightened pleading standard, a plaintiff must "state the time, place, and specific content of the false representations as well as

7 – OPINION AND ORDER

the identities of the parties to the misrepresentation." *Schreiber*, 806 F.2d at 1401; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The purpose of this heightened standard is:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from filing of complaints as a pretext for discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit [] plaintiff[s] from unilaterally imposing on the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted) (internal quotation marks omitted).

When a plaintiff's claim is "grounded in fraud," the entire pleading "must satisfy the particularity requirement of Rule 9(b)." *Id.* Thus, even though fraud may not be a necessary element of the state statutes at issue here, Ms. Taylor's allegation of fraudulent conduct on the part of Nike requires that she plead her claims with particularity. *See id.*; *Rubenstein v. Neiman Marcus Grp. LLC*, 2015 WL 1841254, at *4 (C.D. Cal. Mar. 2, 2015) (stating that Rule 9(b) applies to "state-law 'false advertising' claims under statutes such as the UCL, CLRA and FAL"). Both parties agree that Ms. Taylor's entire Complaint is subject to the heightened pleading standard of Rule 9(b).

### A. *UCL, FAL, and CLRA Claims*

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL "expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition," meaning that any violation to the FAL also violates the UCL. *Hinojos*, 718 F.3d at 1103. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA (JMA), 2015 WL 10436858, at *7 (S.D. Cal. Oct. 9,

8 – OPINION AND ORDER

2015) ("*Branca II*") (quoting Cal. Bus. & Prof. Code § 17500). In relevant part, the FAL prohibits advertising a former price "unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement." Cal. Bus. & Prof. Code § 17501. Finally, the CLRA generally prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The CLRA lists several specific prohibited acts, including "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

To state a claim under any of these consumer protection laws, a plaintiff must allege that the defendant's conduct is deceptive or misleading to a reasonable consumer. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). This implies "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances," could be misled by the defendant's statement. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967-68 (S.D. Cal. 2012) (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Ultimately, whether the defendant's conduct is misleading or deceptive "will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938.

Ms. Taylor asserts claims based on the UCL, FAL, and CLRA. Although the exact elements of each statute differ, all of her claims ultimately depend on her ability to plead Nike's alleged false pricing scheme with particularity. In other words, she must "specify the identities of the parties to fraudulent misrepresentations, where and when the alleged misrepresentations occurred, and the specific content of the false misrepresentations." *Zing Toys, Inc. v. Zuru, LLC*, 3:10-cv-863-MO, 2011 WL 2935404, at *3 (D. Or. July 15, 2011).

Here, the parties dispute whether Ms. Taylor has adequately pled the specific content of Nike's alleged misrepresentation. Pleading the specific content of a false misrepresentation involves "more than conclusory allegations or generic facts." *Id.* at *4. Instead, "the plaintiff must specify what is false or misleading about a statement, and why it is false." *Id.* Here, Nike makes two principle arguments as to why Ms. Taylor fails to satisfy this standard. First, Nike argues that Ms. Taylor failed to plead the "what" of the alleged statements because she did not provide prices for any of the purchased merchandise. Second, Nike argues that Ms. Taylor failed to sufficiently show why the alleged statements were false.

### 1.  The "What" of the Alleged Misrepresentation

Ms. Taylor's failure to allege the specific prices of the items she purchased is not fatal to her Complaint. In fact, I have found no case dealing with similar false pricing schemes that explicitly required a plaintiff to plead prices in order to satisfy Rule 9(b). That being said, plaintiffs typically allege at least some information regarding the price of the purchased items. *See, e.g.*, *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2016 WL 1730001, at *3 (N.D. Cal. May 2, 2016); *Jacobo v. Ross Stores, Inc.*, CV-15-04701-MWF-AGR, 2016 WL 3482041, at *4 (C.D. Cal. Feb. 23, 2016).

Regardless, the absence of price in this case does not prevent Nike from being able to adequately defend against the alleged fraud. Even though Ms. Taylor did not allege the Sugg. Retail Price and Our Price of every individual item, she provided (1) the date on which the items were purchased, (2) the number, types, and product codes for each item, and (3) the location of the outlet store. Nike admitted that such information is sufficient for it to determine both the Sugg. Retail Price and Our Price for all but one of the items Ms. Taylor purchased. Thus, Nike

cannot seriously contend that the absence of price in the Complaint hampers its ability to mount a defense. Accordingly, Ms. Taylor has adequately pled the "what" of the alleged fraud.

### 2. The "Why" of the Alleged Misrepresentation

The more difficult task is determining whether Ms. Taylor adequately alleged the falsity of Nike's representation. In the Ninth Circuit, several district courts have considered this question in the context of similar false pricing schemes and have drawn different conclusions. *Compare Rael v. Dooney & Bourke, Inc.*, No. 16CV0371 JM(DHB), 2016 WL 3952219, at *3-4 (S.D. Cal. July 22, 2016) (finding that the plaintiff failed to allege facts to illustrate why the "original" price was misleading), *with Stathakos*, 2016 WL 1730001, at *4 (finding that the plaintiff did not need to plead the results of a pre-suit investigation to support the conclusion that the Reference Prices were not "former, original, or regular prices"). These cases are highly fact-specific, and it is somewhat difficult to extrapolate general principles from which courts can decide similar cases. As such, even though these cases are instructive, they do not definitively answer whether Ms. Taylor has sufficiently pled her Complaint in this specific case.

Ms. Taylor's core fraud allegation appears to be that reasonable consumers would find Nike's conduct deceptive because: (1) reasonable consumers believe the Sugg. Retail Price to be a former price and (2) unbeknownst to reasonable consumers, the items are made exclusively for Nike Outlet stores or were not sold at the Sugg. Retail Price within 90 days prior to being marked. From her Complaint and subsequent briefing, it is difficult to determine whether this core allegation encompasses one or multiple theories of fraud. Regardless, her assertions are insufficient for several reasons.

### a) Former Price Assertion

As to her first assertion, Ms. Taylor has not alleged with particularity how Nike's price tag is likely to deceive reasonable consumers into believing that the Sugg. Retail Price is a former price.[3] In her Complaint, Ms. Taylor alleges that she "and reasonable consumers understand the MSRP to be the former, original, or regular price of the item on which is [sic] appears." She also alleges that "the term 'outlet' conveys to reasonable consumers that at least some products are comprised of merchandise formerly offered for sale at full-price retail locations" and that she understood the dual price tags to mean "she was receiving a bargain." These assertions might seem sufficient to establish Nike's alleged fraudulent conduct, but on closer look, it is unclear what exactly Ms. Taylor is alleging.

Although she claims to address the issue "in detail below," Ms. Taylor gives no meaning to the terms "former," "original," or "regular." These terms represent three different concepts, but the Complaint treats them as if they are indistinguishable. As such, it is difficult to determine the exact theory upon which she claims she and other consumers were deceived by Nike's dual price tags. Did she believe the Sugg. Retail Price to be one at which the same items were previously offered at Nike retail stores or other, non-outlet retailers? Or, did she believe the Sugg. Retail Price to be one at which the same items were being currently offered by other stores in the relevant market? Or, did she believe the Sugg. Retail Price to be one at which an independent manufacturer determined the items to be worth? Without answering these or similar

---

[3] At oral argument, Ms. Taylor suggested that cases involving price tags with the language "Compare At" or "Compare To," such as the *Branca* cases, did not apply to the situation at hand. Ms. Taylor argues that language like Compare At denotes a value comparison, while Sugg. Retail Price denotes a former price. In the *Branca* cases, however, the plaintiff argued or attempted to argue that she and other consumers believed the Compare At Price to be a former price, just like Ms. Taylor is attempting to argue that she and other consumers understand the Sugg. Retail Price to be a former price. *See Branca II*, 2015 WL 10436858, at *7; *Branca I*, 2015 WL 1841231, at *6-7. Thus, the district court's assessment of the plaintiff's allegations in *Branca I* and *II* is relevant to the situation here. *See also Jacobo*, 2016 WL 3482041, at *6 (noting that "former price" and "Compare At" cases involve the same alleged harm to consumers).

12 – OPINION AND ORDER

questions, it is difficult to identify Ms. Taylor's theory of fraud in a way that allows Nike to adequately defend against the allegations. Thus, Plaintiff has failed to sufficiently plead how she and reasonable consumers understand the Sugg. Retail Price to be a former price.[4]

### b) Made-for-Outlet Assertion

Ms. Taylor's second assertion is that the items in question are "outlet exclusive" in that they were never sold anywhere but Nike Outlet stores or that they did not sell at the Sugg. Retail Price within 90 days of being marked. It is unclear how this assertion relates to Ms. Taylor's core allegation of fraud. In any event, the assertion appears to allege two distinguishable theories of fraud that should be separated in the Complaint.

First, Ms. Taylor's 90-day theory appears to be that even though the Sugg. Retail Price represents a legitimate former price, it was a former price more than 90 days before Nike offered the items at a discounted price, which California law makes fraudulent. *See* Cal. Bus. & Prof. Code § 17501. Ms. Taylor clearly alleges that the Sugg. Retail price was not "the prevailing market price within three months immediately preceding the publication of the former prices." She does not, however, specifically identify the items that were priced outside the 90-day window, allege how such conduct would be deceptive to a reasonable consumer, or state that she is relying on a per se theory of fraud under California law. Accordingly, Ms. Taylor has failed to plead her 90-day theory with particularity.

Second, Ms. Taylor alleges the items are outlet exclusive because they were manufactured exclusively for sale in Nike Outlet stores. Again, it is unclear what Ms. Taylor

---

[4] This conclusion does not undermine the fact that generally, whether a defendant's conduct is misleading or deceptive is "a question of fact not appropriate for decision" on a motion to dismiss. *See Williams*, 552 F.3d at 938. Even though the ultimate question of whether a statement is misleading to a reasonable consumer is a question of fact, the plaintiff must still allege a coherent theory by which the factfinder could conclude the statement is deceptive. In other words, a plaintiff must still allege why the statement is misleading, even though she need not prove it to be so. *See Chester v. TJX Companies, Inc.*, No. 515CV01437ODWDTB, 2016 WL 4414768, at *12 (C.D. Cal. Aug. 18, 2016) ("The focus is on whether enough facts support a reasonable consumer's reaction to an allegedly deceptive advertisement – not whether enough facts can definitively prove fraud at the pleading stage.").

attempts to demonstrate with this argument. It might be that Ms. Taylor makes this allegation as a way to infer that the Sugg. Retail Price is an illegitimate former price. It is equally plausible, however, that Ms. Taylor attempts to allege an entirely new theory: that reasonable consumers believe they are receiving high-quality, retail merchandise when in fact they are receiving lower quality, made-for-outlet merchandise. If the former, the allegation merely buttresses Ms. Taylor's former price assertion and, even if sufficiently pled in its own right, does not prevent the Complaint from being dismissed. If the latter, Ms. Taylor fails to plead the theory with particularity because she never alleges that she believed the items were of higher quality than what she actually received. In any event, the Complaint's lack of clarity prevents Nike from mounting a legitimate defense and warrants dismissal.

     c)  **Made-for-Outlet Assertion as a Buttress to Former Price Assertion**

  Assuming Ms. Taylor asserts the items are outlet exclusive to infer the Sugg. Retail Price is illegitimate as a former price, the question has arisen as to whether she has adequately alleged her made-for-outlet assertion. To support this assertion, Ms. Taylor relies on news articles that detail false pricing schemes at similar outlet stores and confirmations of unnamed Nike Outlet employees. Ms. Taylor argues that she is not required to conduct a pre-suit investigation and that her allegations are sufficient to satisfy the heightened pleading requirement under Rule 9(b).

  Ms. Taylor principally relies on *Stathakos* to demonstrate that she is not required to plead the results of a pre-suit investigation to demonstrate the items in question are exclusively sold in

Nike Outlet stores.[5] In *Stathakos*, the defendant argued that the plaintiffs were required to allege "pre-suit investigation revealing that the items they purchased were previously sold . . . at a price lower than the alleged Reference Price." 2016 WL 1730001, at *4. The court, however, disagreed, reasoning that "plaintiffs are not required to plead that they had conducted a pre-suit investigation – or include the results of such investigations – in every case, particularly where the information is not within the personal knowledge of the pleader." *Id.* As such, the plaintiffs allegations that the items were exclusively manufactured for Columbia outlet stores was sufficient. *Id.*

The outcome in *Stathakos* appears to be an exception to the general rule regarding sufficient pleadings under Rule 9(b). As noted above, Rule 9(b) requires a plaintiff to detail the who, what, when, where, and how of an alleged misrepresentation, which generally involves a "precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Jacobo*, 2016 WL 3482041, at *3 (quoting *Ackerman v. Nw. Mut. Life Ins., Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). In *Stathakos*, the court made an exception because the information was "not within the personal knowledge of the pleader." 2016 WL 1730001, at *4; *see also Chester*, 2016 WL 4414768, at *13 ("[F]acts supporting allegations of fraud that are exclusively within the defendant's possession and of which a plaintiff cannot be expected to have personal knowledge prior to discovery are not held to Rule 9's heightened strictures." (citation omitted) (internal quotation marks omitted)). In contrast, in *Dooney & Bourke*, the court suggested that information regarding an alleged false pricing scheme was not necessarily within

---

[5] Ms. Taylor also relies on two unpublished California state cases, *Adame v. Guess?* (No. BC579128) and *Young v. Levi Strauss & Company* (CGC-14-541316), to support her position. Regardless of what these cases say, they are unpersuasive for purposes of the current motion. For one, Ms. Taylor has made no argument that the complaints filed in California state courts were subjected to the same or a similar pleading standard of Rule 9(b). Furthermore, the cases are unpublished, meaning the Court cannot rely on them as precedent. *See Robinson v. Lewis*, 795 F.3d 926, 930 (9th Cir. 2015) (noting that Rule 8.115 of the California Rules of Court direct courts not to rely on unpublished cases as precedent).

the exclusive control of the defendant. 2016 WL 3952219, at *3. Thus, some specifics regarding a pre-suit investigation were required. *Id.*

I am not convinced that the information regarding Ms. Taylor's made-for-outlet allegation is solely within the control of Nike. She could support her assertion, for example, by looking at Nike and other retailers in the area or doing a quick search online for the same items offered in Nike Outlet stores.[6] Such investigation would by no means prove her claim, but it would provide factual support for her allegation that the items are exclusively sold in Nike Outlet stores. Thus, I disagree with Ms. Taylor that she need not conduct any pre-suit investigation in order to satisfy the heightened pleading requirement of Rule 9(b).

That said, it appears that Ms. Taylor did conduct a pre-suit investigation and alleged some of the results of such investigation in her Complaint. Specifically, she alleges that "sales associates at Nike Outlet [stores] routinely confirm that products are manufactured exclusively for outlet stores." Although extremely vague, this allegation is likely sufficient to satisfy Rule 9(b), at least in regard to Ms. Taylor's assertion that the items are only sold in Nike Outlets. Thus, even though reliance on industry practices alone is insufficient to demonstrate the items are outlet exclusive, when coupled with the purported confirmation of Nike sales associates, Ms. Taylor has satisfied her burden to plead the assertion with particularity. As I stated above, however, at best this assertion supports a "former price" theory of fraud that is defective for other reasons.

### 3. Additional Pleading Issue Under CLRA

Even though Ms. Taylor's failure to plead Nike's false pricing scheme with particularity is fatal to her California state law claims, there is an additional problem with her CLRA claim.

---

[6] To the extent that products with identical names and appearances have indistinguishable differences, as Ms. Taylor argues, Ms. Taylor can make this assertion in her complaint.

16 – OPINION AND ORDER

As noted above, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Ms. Taylor alleges that Nike's conduct violated two specific prohibitions in the CLRA: subsection (a)(9) and subsection (a)(13). Under subsection (a)(13), an advertiser is prohibited from making "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13). Because Ms. Taylor has not pled the alleged false pricing scheme with particularity, she has not adequately pled a violation to subsection (a)(13).

Subsection (a)(9) is different. It prohibits advertisers from advertising "goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). Courts have generally applied this subsection to situations where a consumer has been "baited" into purchasing an item that turns out to be different than was advertised. *Lengen v. General Mills, Inc.*, 2016 WL 2602416, at *6 (E.D. Cal. May 5, 2016) (applying subsection (a)(9) where Cheerios containing gluten were advertised as "Gluten Free" in the stream of commerce); *Kelly v. BP West Coast Prods. LLC*, 2014 WL 7409220, at*6 (E.D. Cal. Dec. 30, 2014) (applying subsection (a)(9) where gas was advertised at one price but ended up costing a higher price after consumer inserted his credit card). Here, there are no allegations that the items sold were different than what Nike purported them to be at the time of purchase, or that Ms. Taylor purchased products at a different price than was advertised. Thus, even if Ms. Taylor is able to allege the false pricing scheme with particularity, she may still fail to state a claim for relief under subsection (a)(9), unless she can allege additional facts to show that Nike sold "goods or services with intent not to sell them as advertised."

### B. *Unjust Enrichment Claim*

Finally, Ms. Taylor also asserts a claim for unjust enrichment. Because she has failed to

adequately plead her UCL, FAL, and CLRA claims, her unjust enrichment claim necessarily fails.

In California, "there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.* 783 F.3d 753, 762 (9th Cir. 2015). This does not mean that unjust enrichment is irrelevant under California law; rather it is simply a "theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Id.* (internal quotations omitted). As such, failure to allege a substantive claim for relief – such as one under the UCL, FAL, or CLRA – warrants dismissal of any additional claim for unjust enrichment. *See Hovsepian v. Apple, Inc.*, 08-5788 JF (PVT), 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008).[7]

In this case, Ms. Taylor has failed to sufficiently plead the alleged fraudulent pricing scheme underlying her state law causes of action. Therefore, her unjust enrichment claim cannot survive.

## CONCLUSION

For the reasons stated above, I find that Ms. Taylor has alleged sufficient facts to establish Article III standing for economic damages. She has not demonstrated, however, that she has standing to seek injunctive relief. Furthermore, she has failed to sufficiently plead Nike's alleged fraudulent pricing scheme with particularity as required by Rule 9(b). Accordingly, I GRANT Defendant's Motion to Dismiss [15] and DISMISS the Complaint [1]. Because Ms.

---

[7] In response, Ms. Taylor argues that California law clearly recognizes a freestanding claim for unjust enrichment and cites several cases in support of her position. *See Le v. Kohls Dep't Stores*, No. 15-CV-1171-JPS, 2016 WL 498083 (E.D. Wis. Feb. 8, 2016) (interpreting California law). The cases, however, do not stand for what Ms. Taylor claims they do. Rather, they simply address whether California recognizes a cause of action for unjust enrichment at all; a point Nike does not dispute. In *Le*, for example, the court simply found that California law permitted a cause of action for unjust enrichment even where a party "set[s] out alternative claims for relief." *Id.* at *17 (citing *Astiana*, 783 F.3d at 762). This is not the same as saying that a plaintiff may bring a claim for unjust enrichment absent any substantive claim for relief.

18 – OPINION AND ORDER

Taylor may cure the Complaint's deficiencies with additional facts, I grant leave to amend the Complaint. The amended complaint is due 30 days after the issuance of this Opinion and Order.

DATED this __17th__ day of February, 2017.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
Chief United States District Judge

19 – OPINION AND ORDER