**J. Matthew Donohue, OSB NO. 067542**
MattDonohue@MarkowitzHerbold.com
**Shannon Armstrong, OSB No. 060113**
ShannonArmstrong@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth, Suite 3000
Portland, OR  97204
Telephone:  (503) 295-3085
Fax:  (503) 323-9105

**Jeffrey M. Ostrow, Florida Bar No. 121452**
ostrow@kolawyers.com
**Scott A. Edelsberg, Florida Bar No. 0100537**
edelsberg@kolawyers.com
KOPELOWITZ OSTROW P.A.
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, FL  33301
Telephone:  (954) 525-4100
Fax:  (954) 525-4300
*(pro hac vice to be applied for)*

**Jeffrey D. Kaliel, California Bar No. 238293**
jkaliel@tzlegal.com
TYCKO & ZAVAREEI LLP
1828 L Street, NW, Suite 1000
Washington, DC  20036
Telephone:  (202) 973-0900
Fax:  (202) 973-0950
*(admitted pro hac vice)*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

**Page 1 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

| | |
|---|---|
| **MONIKA TAYLOR, individually and on behalf of all others similarly situated,** | Case No.: 3:16-cv-00661-MO |
| **Plaintiff,** | **AMENDED CLASS ACTION ALLEGATION COMPLAINT** |
| **v.** | **Unfair Or Deceptive Trade Practices Action (28 U.S.C. § 1332)** |
| **NIKE, INC.,** | |
| **Defendant.** | **DEMAND FOR JURY TRIAL** |

Plaintiff, MONIKA TAYLOR ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations:

## INTRODUCTION

1.

This is a civil class action seeking monetary damages, restitution, injunctive, and declaratory relief from Defendant, Nike, Inc. ("Nike"), arising from its deceptive and misleading labeling and marketing of merchandise it manufactures for exclusive sale at its company-owned Nike Outlet stores ("Nike Outlets").

2.

During the Class Period (defined below), Nike misrepresented the existence, nature, and amount of price discounts on products exclusively sold in Nike Outlet stores, or exclusively sold within the last 90 days at Nike Outlet stores (collectively "Outlet Products") by purporting to offer discounts off of a false "Sugg. Retail Price."

3.

More specifically, Plaintiff and reasonable consumers understand the Sugg. Retail Price to be the bona fide former price of the item on which is appears.  Plaintiff and reasonable consumers understand Sugg. Retail Price to indicate a price at which the identical product was

**Page 2 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

sold at Nike retail stores or other non-outlet retailers, —or at the very least the price at which the identical product was recently sold (in the prior 90 days) ("former price").  Such former price information provides important information about the value of the product and the bargain to reasonable consumers.

4.

Nike advertised—on the price tags of its Nike Outlet Products[1]—Sugg. Retail Prices and then advertised, on the same price tags, a price termed "OUR PRICE," which supposedly represented a steep discount off of the Sugg. Retail Price.  The Outlet Product's tags bearing the Sugg. Retail Price and false discounted price constitute advertisements under California law.  Indeed, the coupling of the Sugg. Retail Price with the so-called discounted price makes a statement to the public as to the existence of a price discount and promotes the sale of Outlet Products on that basis.

5.

However, the Sugg. Retail Prices used by Nike did not convey accurate information about the Outlet Products, and were instead a sham designed to mislead and deceive consumers.  Certain products were manufactured exclusively for Nike Outlets, and never sold anywhere but Nike Outlets ("Outlet Exclusive Products").  On Outlet Exclusive Products, Sugg. Retail Prices conveyed a price at which the goods *never* sold previously—for the simple reason that they were never sold at the Sugg. Retail Price at any location and were sold only at Nike Outlets at the supposed "discount" price.

---

[1] The general term "Outlet Products" means: (1) products sold exclusively at Nike Outlets; and/or (2) products sold at Nike Outlets that were not sold for their marked Sugg. Retail Price in the preceding 90 days.

**Page 3 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

6.

Upon information and belief, other Outlet Products are "repeats" of products that historically sold in non-Outlet stores, but not for many months or even years ("Outlet Repeats"). Due to the significant time delay, Sugg. Retail Prices on these Outlet Repeats do not represent a bona fide price at which the goods are currently available for sale in the relevant market or a price at which the goods were sold within three months immediately preceding the publication of the advertised former prices, as required by California law.   Therefore, the referenced Sugg. Retail Prices on Outlet Repeats are fraudulent *per se*.

7.

With both Outlet Exclusive Products and Outlet Repeats, Nike led consumers to believe that its Sugg. Retail Prices represented authentic price information about the products.  In reality, Nike manufactures the Outlet Exclusive Products for *exclusive sale* at its Nike Outlets and always sells these goods for the advertised "OUR PRICE," and never the Sugg. Retail Price. Accordingly, such items were never sold, never suggested to be sold, or even intended to be sold—at the "Sugg. Retail Price" listed on its price tags.  Outlet Exclusive Products are only sold for the lower "OUR PRICE."

8.

Similarly, Outlet Repeats are marked with Sugg. Retail Prices even though they have not sold for those prices in recent history, as required by California law.  *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three*

**Page 4 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

*months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(emphasis added).

9.

Nike knows consumers are bargain hunters, and knows consumers are excited by the prospect of a bargain. The juxtaposition of an artificial Sugg. Retail Price and an "OUR PRICE" on Nike Outlet Product price tags is intentionally designed to convey to consumers that the consumer is receiving a bargain or a "deal" on the product—on sales terms more preferential or more optimal to the consumer than those offered outside the context of the outlet store. But there is no bargain to be had. The Sugg. Retail Price on Nike Outlet Products exists only to create the illusion of a bargain.

10.

The Federal Trade Commission ("FTC") explicitly describes this fictitious pricing scheme employed at Nike Outlets as deceptive:

> (a)     Many members of the purchasing public believe that a manufacturer's list price, or *suggested retail price*, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer. A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
>
> (b)     It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular

**Page 5 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3.

11.

The Nike Outlet pricing scheme was prominently advertised on the price tags of all Nike Outlet Products in California.  To illustrate, below is an example of the merchandise price tags that Plaintiff relied on:



12.

Upon information and belief, thousands of California consumers were victims of Nike's deceptive, misleading, and unlawful false pricing scheme and thousands more, including Plaintiff, will be deceived if the practices continue.

13.

Nike fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and others similarly situated, the truth about its Sugg. Retail Prices and advertised price discounts from those supposedly "suggested prices."

**Page 6 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

14.

Nike's false representations of Sugg. Retail Prices and false representations of savings, discounts, and bargains are objectively material to a reasonable consumer.

15.

Plaintiff relied upon such false representations of Sugg. Retail Prices and discounts when purchasing apparel from a Nike Outlet in California.  Plaintiff would not have made such purchases, or would not have paid the amount she did, but for Nike's false representations of the Sugg. Retail Price of the items they purchased, especially when juxtaposed with the supposedly discounted "OUR PRICE" at which Nike offered the items for sale.

16.

Plaintiff, in short, believed the truth of the price tags attached to the products she purchased at a Nike Outlet, which expressly told her that she was getting a terrific bargain on her purchases.  In reality, she was not getting a bargain at all.

17.

Through its false and deceptive marketing, advertising, and pricing scheme, Nike violated (and continues to violate) California law.  Specifically, Nike violated (and continues to violate) California's *Business & Professions Code* § 17200, *et seq.* (the "UCL"), California's *Business and Professions Code* § 17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, *Civil Code* § 1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements.  15 U.S.C. §§ 52(a) and 15 U.S.C. § 45(a)(1).

**Page 7 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

18.

Plaintiff, individually and on behalf of all others similarly situated, seeks restitution and other equitable remedies, including an injunction under the UCL, FAL and CLRA.[2]

**PARTIES**

19.

Plaintiff, Monika Taylor, is an individual who is a citizen of the City of Orange, County of Orange, California.  In reliance on Nike's false and deceptive advertising, marketing, and pricing schemes, Ms. Taylor purchased seven Nike Outlet Products from the Nike Outlet located in Orange, California on June 20, 2015, and as detailed herein, was damaged as a result thereof.

20.

Defendant Nike is a corporation duly organized and existing under the laws of the State of Oregon, with its principal place at One Bowerman Drive, Beaverton, OR 97005. Defendant operates 24 Nike Outlets in California.

**JURISDICTION AND VENUE**

21.

This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of the proposed Class is a citizen of a different state than Nike.

---

[2] Plaintiff acknowledges the Court's ruling in its February 17, 2017 Order on Nike's Motion to Dismiss, in which the Court found that Plaintiff may not maintain a claim for injunctive relief under California's consumer protection laws.  However, solely to preserve Plaintiff's full right to seek appellate review of the Court's holding with respect to injunctive relief, this Amended Complaint continues to seek injunctive relief. Plaintiff understands the Court is likely to dismiss such claims again.

**Page 8 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

22.

The District of Oregon has personal jurisdiction over Nike because Nike is a corporation or other business entity with its principal place of business in this District.

23.

Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Nike's principal place of business is found within this District, and a substantial part of the events giving rise to Plaintiff's claims arose here, including the creation of the scheme alleged in this Complaint.

**FACTUAL ALLEGATIONS**

24.

Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise.  Customers often flocked to these outlets in hopes of finding steep discounts and bargains. *See http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/* (last visited July 11, 2014).

25.

However, in an effort to increase profits, major retailers such as Nike have, without notice to consumers, begun using company-owned "outlet" stores to sell made-for-outlet goods that are never intended to be sold at non-outlet stores—manufacturing either products never sold anywhere but outlets, or never sold anywhere but outlets in recent history.

26.

In California, such "outlet" stores are located in purpose-built malls touted as "outlets," or "premium outlets."  For example, Plaintiff Taylor purchased her Nike Outlet Products at the premium outlets in Orange, California.

**Page 9 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

27.

Nike create the illusion of traditional outlet discounts and bargains by offering Outlet Products at prices reduced from fabricated, arbitrary, and false Sugg. Retail Prices.

28.

Nike manufactures Nike Outlet Products exclusively for outlet stores—both Outlet Exclusive Products that were never sold anywhere else, and Outlet Repeats that were never sold anywhere else in recent history.

29.

Indeed, prior to filing this action, Counsel for Plaintiff specifically asked two different Nike store employees, at different times and locations, whether products were manufactured exclusively for Nike Outlet stores.  Both employees answered in the affirmative.  *See also* http://twocents.lifehacker.com/how-to-shop-smart-and-save-money-at-outlet-stores-1696863689 ("Nike factory stores are among the most popular in the country. **They carry a mixture of last season's styles along with items made specifically for the outlet**.") (last visited March 3, 2017) (emphasis added); http://www.cheapism.com/outlet-quality/ ("Nike's goal has always been to use outlet stores as liquidation for anything left over from their wholesale accounts, though they have begun manufacturing T-shirts for their outlets to fill out stock") (last visited March 3, 2017); http://www.moneycrashers.com/shopping-tips-outlet-malls-factory-stores/ ("[Nike] Factory stores sell goods that were specifically produced for outlet malls") (last visited March 3, 2017).

30.

The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market.  To illustrate, on January 30, 2014, four Members of

**Page 10 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

Congress demanded an FTC investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at Nike Outlets and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." *See http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers* (last visited June 26, 2015).

31.

This is precisely the practice used by Nike in its Nike Outlets.

### Plaintiff's Purchases

32.

On June 20, 2015, Plaintiff Taylor entered the Nike Outlet located in Orange, California. She observed that merchandise was advertised with price tags that represented a "Sugg. Retail Price" next to a significantly reduced "OUR PRICE." She also observed that other items in the store did not make these price-reduction representations on their price tags. Ms. Taylor understood that the items with the "Sugg. Retail Price" tags represented that she was receiving a bargain or a "deal" on the product—on sales terms more preferential or more optimal to the consumer than those offered outside the context of the outlet store. Enticed by this prospect, Plaintiff was induced to purchase one Jordan Jumpman High shirt bearing Style Number 883153882939, two Jordan Air Sneaker Socks bearing Style Numbers 884500205185 and 886059183419, one Air Jordan DriFit Crew bearing Style Number 883212934338, two Baseball

**Page 11 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

Diamond Speed shirts bearing Style Numbers 887227821126 and 887227821065, and one Fly Elephant Pocket Tee bearing Style Number 885176081653.[3]

33.

Each of these items, and the other items she bought, advertised a Sugg. Retail Price and a lower OUR PRICE.

34.

Plaintiff cannot meaningfully determine which of the above products were Outlet Exclusive Products and which were Outlet Repeats, without access to Nike data, for many reasons.  For example, even identically-named products may have differences that are difficult or impossible to discern.  Other products may have a similar shape but be made of different materials.  Other products may be identical but for color or stitching variations. In addition, Nike does not maintain an online presence for Nike Outlet Stores, meaning Plaintiff cannot use web searches to investigate pricing information for Nike Outlet Products.

35.

Moreover, even if she could determine which of the products she purchased were Outlet Repeats (as opposed to Outlet Exclusive Products), Plaintiff cannot meaningfully determine whether an Outlet Repeat had been sold at its Sugg. Retail Price in large numbers during the 90 days preceding her purchase, without access to Nike data.  Plaintiff can only know what a product is being sold for *currently*; without access to Nike data, Plaintiff cannot know what the product sold for previously.  Even if Plaintiff could, the sale price of *one product* does not alone

---

[3] Only a subset of Plaintiff's purchases are highlighted above to demonstrate Nike's deceptive marketing scheme.  Plaintiff Taylor also made numerous other purchases of Nike Outlet Products during the Class Period, which include, but are not limited to, shirts, shoes, sweaters, socks, and pants.  Plaintiff maintains these receipts and will make them available as litigation progresses.

**Page 12 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

indicate what the "prevailing" price was for that same item. The latter information could only be gathered by evaluating prices at each Nike Outlet or other store at which the product was sold. In other words, Plaintiff would have to know the sales prices for all of a given item during the preceding 90 days.  Such information is not publicly available in any reasonable sense.

36.

For the products purchased by Plaintiff, they were either never sold at the Sugg. Retail Price, or not sold in large numbers at that price in recent history.

37.

Plaintiff Taylor would not have purchased the products, or would not have paid the prices she did, if she had known she was not truly receiving a bargain, or receiving a discount, as specified.

38.

Plaintiff's and class members' reliance on Defendant's false price comparison advertising was reasonable.  In fact, empirical marketing studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation,… or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992).  In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

**Page 13 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

39.

Despite the "Sugg. Retail Price" versus "OUR PRICE" scheme used at Nike Outlets, Plaintiff would purchase Nike products in the future from Nike Outlet stores and/or other retail establishments, if product labels accurately reflect discounts and bargains. If the Court were to issue an injunction ordering Nike to comply with California's comparative price advertising laws, and prohibiting Nike's use of the deceptive practices discussed herein, Plaintiff would likely shop for Nike Outlet Products again in the near future at Nike Outlets.

**CLASS ALLEGATIONS**

40.

Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

41.

Plaintiff brings this claim individually and as a Class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following subclass of persons located within the state of California (the "Class"):

> All individuals in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased Nike Outlet Products from a Nike Outlet store in California.

> Plaintiff reserves the right to redefine the Class or additional subclasses prior to certification.

42.

Excluded from the Class are Nike, its parents, subsidiaries, affiliates, officers and directors, any entity in which Nike has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges, including their staff, assigned to hear any aspect of this litigation, as well as their immediate family members.

**Page 14 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

43.

Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

44.

The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Nike's records.

45.

There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    Whether, during the Class Period, Nike used false price representations and falsely advertised price discounts on its merchandise sold at Nike Outlets;

(b)    Whether, during the Class Period, Nike sold merchandise at the Sugg. Retail Prices advertised by Nike outside of its Nike Outlets;

(c)    Whether, during the Class Period, the Sugg. Retail Prices advertised by Nike were the prevailing market prices for the respective merchandise sold at Nike Outlets during the three month periods preceding the dissemination and/or publication of the advertised former prices;

(d)    Whether Nike's use of false or deceptive price advertising constituted false advertising under California Law;

**Page 15 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

(e)      Whether Nike engaged in unfair, unlawful and/or fraudulent business practices under California law;

(f)      Whether Nike misrepresented and/or failed to disclose material facts about its product pricing and discounts;

(g)      Whether Nike has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(h)      Whether Nike's conduct, as alleged herein, was intentional and knowing;

(i)      Whether Class members are entitled to damages and/or restitution, and in what amount;

(j)      Whether Nike is likely to continue using false, misleading, or illegal price comparisons such that an injunction is necessary; and

(k)      Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

46.

Plaintiff's claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a Nike Outlet that falsely conveyed a "Sugg. Retail Price" representation and a fictitious discount.  Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

47.

Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**Page 16 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

48.

A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Nike's wrongful conduct are too small to warrant the expense of individual lawsuits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

49.

The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Nike.  For example, one court might enjoin Nike from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

50.

The conduct of Nike is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, the systematic policies and practices of Nike make declaratory relief appropriate.

## COUNT I
**(Violation of the "Unfair" Prong of the UCL)**

51.

Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-50 as if fully set forth herein.

**Page 17 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

52.

The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

53.

A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

54.

Nike has violated the "unfair" prong of the UCL by representing a false and misleading "Sugg. Retail Price" and corresponding "OUR PRICE" representation for goods exclusively manufactured for sale at Nike Outlets. As a result, the inflated "Sugg. Retail Price" and corresponding "OUR PRICE" was nothing more than a false, misleading, and deceptive illusion of a discount.

55.

These acts and practices are unfair because they caused Plaintiff, and are likely to cause consumers, to falsely believe that Nike Outlet is offering value, discounts, or bargains from the prevailing market worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly were or were intended to be sold at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiff, to buy such products, which they otherwise would not have purchased.

**Page 18 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

56.

The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Nike for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Nike engages in unfair business practices within the meaning of California Business & Professions Code § 17200, et seq.

57.

Through its unfair acts and practices, Nike has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this court cause Nike to restore this money to Plaintiff and all Class members, and to enjoin Nike from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT II
### (Violation of the "Fraudulent" Prong of the UCL)

58.

Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-57 as if fully set forth herein.

59.

The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

**Page 19 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

60.

A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

61.

Nike's labels and advertising materials concerning false and misleading Sugg. Retail Prices were fraudulent within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the class, into believing that Nike was offering value, discounts, or bargains at Nike Outlets from the prevailing market value or worth of the products sold that did not, in fact, exist.

62.

Nike deceived consumers into believing that it was offering value, discounts, or bargains at Nike Outlets from the prevailing market value, real advertised price, or worth of the products sold that did not, in fact, exist.

63.

As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that were worth more than what they paid.  This perception induced reasonable purchasers, including Plaintiff, to buy such products from Nike Outlets, which they otherwise would not have purchased.

64.

Nike's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public.  Specifically, in deciding to purchase merchandise from a Nike Outlet store, Plaintiff relied on Nike's misleading and deceptive representations regarding its "Sugg. Retail Price" and "OUR PRICE" price tags.  Each of these

**Page 20 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of Nike's misrepresentations. Accordingly, Plaintiff suffered monetary loss as a direct result of Nike's pricing practices described herein.

65.

As a result of the conduct described above, Nike has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Nike has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

66.

Through its unfair acts and practices, Nike has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nike to restore this money to Plaintiff and all Class members, and to enjoin Nike from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III
### (Violation of the "Unlawful" Prong of the UCL)

67.

Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-66 as if fully set forth herein.

68.

The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

**Page 21 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

69.

A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

70.

California statutory and regulatory law also expressly prohibits false former pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

*Id.*

71.

*Civil Code* § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

72.

Nike also violated and continues to violate *Business & Professions Code* § 17501, and *Civil Code* § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months immediately preceding the publication and dissemination of advertisements containing the false

**Page 22 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

former prices.  Plaintiff believed she was purchasing products that had sold at Nike retail or other non-outlet stores in the recent past, but was not.

73.

Further, the FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements.  (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a).)  The FTC has established Guidelines which prohibit false pricing schemes, similar to Nike's Sugg. Retail Price/OUR PRICE Scheme in material respects, as deceptive practices that would violate the FTCA:

> (a)      Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer. A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
> (b)      It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3.

74.

Nike's use of and reference to a materially false "Sugg. Retail Price" in connection with its marketing and advertisements concerning the merchandise sold at Nike Outlets violated and

**Page 23 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

75.

As a result of the conduct described above, Nike has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Nike has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

76.

Through its unlawful acts and practices, Nike has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nike to restore this money to Plaintiff and all Class members, and to enjoin Nike from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT IV**
**(Violation of the California False Advertising Law,**
**California Business & Professions Code Section 17500, *et seq.*)**

77.

Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-76 as if fully set forth herein.

78.

California's *Business and Professions Code* § 17500, *et seq.* prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price.

**Page 24 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

79.

Nike's practice of advertising "Sugg. Retail Prices" on Outlet Exclusive Products, which were materially greater than the actual prices of those products was an unfair, deceptive, and misleading advertising practice because it gave the false impression that the products sold at Nike Outlets were worth more than they actually were. In fact, the Outlet Exclusive Products did not sell for a price anywhere close to the "Sugg. Retail Price" advertised because the merchandise was always sold for, or discounted further from, the OUR PRICE representation on the price tag when placed on sale at the Nike Outlets.

80.

Through its unfair acts and practices, Nike has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nike to restore this money to Plaintiff and all Class members, and to enjoin Nike from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT V**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code Section 1750, *et seq.*: Injunctive Relief)**

81.

Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-80 as if fully set forth herein.

82.

This cause of action is brought pursuant to the CLRA.

**Page 25 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

83.

Plaintiff and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d).

84.

Nike's selling of goods manufactured exclusively for sale at Nike Outlets to Plaintiff and the Class were "transactions" within the meaning of California *Civil Code* § 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code §1761(a).

85.

As described herein, Nike violated the CLRA by falsely representing the nature, existence, and amount of price discounts by fabricating inflated "Sugg. Retail Prices" on price tags.  Such a pricing scheme is in violation of Cal. Civ. Code § 1770 (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

86.

Plaintiff relied on Nike's false representations in deciding to purchase goods at a Nike Outlet.  Plaintiff would not have purchased such items absent Nike's unlawful conduct.

87.

Plaintiff requests this Court enjoin Nike from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff, the Classes and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

**Page 26 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

## COUNT VI
### (Unjust Enrichment)

88.

Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-87 as if fully set forth herein.

89.

Plaintiff brings this claim individually, as well as on behalf of members of the Classes, under California law.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which Class members will be drawn, California law applies to the claims of the Classes.

90.

In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

91.

At all times relevant hereto, Defendant deceptively priced, marketed, advertised, and sold Nike Outlet Products to Plaintiff and the Classes.

92.

Plaintiff and members of the Classes conferred upon Defendant non-gratuitous payments for merchandise that they would not have made if not for Defendant's deceptive pricing,

**Page 27 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

93.

Defendant has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that its merchandise was being offered at a significant discount, which caused injuries to Plaintiff and members of the Classes because they paid for, and/or paid a price premium due to the misleading pricing and advertising.

94.

Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendant must pay restitution to Plaintiff and members of the Classes for unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant Nike as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

**Page 28 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

B.     Pursuant to Plaintiff's first four causes of action, a judgment awarding Plaintiff and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class as a result of its unlawful, unfair, and fraudulent business practices described herein;

C.     An order enjoining Defendant from continuing to violate the UCL, False Advertising Law and CLRA as described herein;

D.     A judgment awarding Plaintiff her costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-judgment interest;

E.     Excluding the fifth cause of action, an order awarding Plaintiff and the proposed Class members damages;

F.     Excluding the fifth cause of action, an order awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair and fraudulent business practices described herein; and

G.     Such other and further relief as may be deemed necessary or appropriate.

## JURY TRIAL DEMANDED

PLAINTIFF demands a jury trial on all triable issues.

DATED this 17th day of March, 2017.

MARKOWITZ HERBOLD PC

By:    */s/  Shannon Armstrong*

J. Matthew Donohue, OSB NO. 067542
Shannon Armstrong, OSB No. 060113
(503) 295-3085

**Page 29 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**

KOPELOWITZ OSTROW P.A.
Jeffrey M. Ostrow, Florida Bar No. 121452
Scott A. Edelsberg, Florida Bar No. 0100537
(*pro hac vice to be applied for*)
(*pro hac vice to be applied for*)
(954) 525-4100

TYCKO & ZAVAREEI LLP
Jeffrey D. Kaliel, California Bar No. 238293
(admitted *pro hac vice*)
 (202) 973-0900

Attorneys for Plaintiff

605398

**Page 30 – AMENDED CLASS ACTION ALLEGATION COMPLAINT**